UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JOANNA O., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-130-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Joanna O. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 5, 6. Plaintiff also filed a reply brief. *See* ECF No. 7. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 5) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 6) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for DIB on June 28, 2018, alleging disability beginning September 21, 2017 (the disability onset date), due to: (1) Lyme Disease; (2) pituitary disorder; (3) metabolic syndrome; (4) obesity; (5) obstructive sleep apnea syndrome: (6) hypothalamic dysfunction; and (7) chronic nonalcoholic liver disease. Transcript ("Tr.") 81, 210-11, 227. Plaintiff's claim was denied initially on September 13, 2018, after which Plaintiff

requested an administrative hearing. Tr. 81. On March 16, 2020, Administrative Law Judge Martha Bower ("the ALJ") conducted a video hearing from Providence, Rhode Island. Plaintiff appeared and testified from Buffalo, New York, and was represented by Carol Brent, an attorney *Id*. Martina Henderson, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on April 2, 2020, finding Plaintiff not disabled. Tr. 78-96. On December 1, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's April 2, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## <u>ADMINISTRATIVE LAW JUDGE'S FINDINGS</u>

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 2, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since September 21, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: vertigo, morbid obesity, obstructive sleep apnea, and asthma (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)[1] except she can occasionally climb ramps and stairs, and occasionally balance; she can frequently stoop, kneel, crouch, and crawl; she can never climb ropes, ladders, or scaffolds. She must avoid concentrated exposure to pulmonary irritants and cannot be exposed to hazards, such as unprotected heights or dangerous equipment.

6. The claimant is capable of performing past relevant work as an inventory clerk, a quality assurance clerk, and as a program coordinator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 21, 2017, through the date of this decision (20 CFR 404.1520(f)).

Tr. 81-93.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on June 28, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 93.

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she is determined to also be able to do sedentary and light work. 20 CFR 416.967(c).

## ANALYSIS

Plaintiff asserts two points of error. Plaintiff first argues that the ALJ "rejected the only useful medical opinions of record" and "improperly misread and evaluated Plaintiff's diagnoses, treating findings, and evidence." *See* ECF No. 5-1 at 18-27. Plaintiff's second point of error contends that the ALJ "used selective reading and mischaracterized treatment" to improperly diminish the credibility of Plaintiff's testimony. *See id*. at 27-30. According to Plaintiff, these errors resulted in an RFC finding that was not supported by substantial evidence. *See id*. at 18-30.

In response, the Commissioner argues that the ALJ's RFC finding was supported by substantial evidence, and the ALJ properly considered the opinion evidence. *See* ECF No. 6-1 at 7-14. The Commissioner also argues that the ALJ properly analyzed Plaintiff's subjective complaints and reasonably concluded that they were inconsistent with the evidence in the record. *See id*. at 14-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ's conclusion that Plaintiff had the RFC to perform medium work with additional limitations was supported by substantial evidence, including opinion evidence, Plaintiff's physical examination findings, her history of conservative treatment, and her activities of daily living. Furthermore, the ALJ provided an extensive analysis of Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms

and reasonably concluded that they were inconsistent with the evidence in the record. Accordingly, the Court finds no error.

Plaintiff alleges that a combination of Lyme disease, as well as disorders of the hypothalamus and pituitary gland, significantly limit her physical functioning. She also alleges that these impairments cause constant pain, resulting in great limitation and/or the inability to lift, stand, walk, sit, climb stairs, kneel, squat, and use her hands. Plaintiff further alleges that due to these conditions, she is extremely fatigued and sleeps 16 hours per day. Tr. 101, 103-13, 226-41, 242-61, 301-03.

On November 17, 2017, Plaintiff presented to Deborah Dzielski, ANP ("Ms. Dzielski"), for "diffuse pain secondary to Lyme disease." Tr. 360-65. Plaintiff reported generalized pain on the lower back and base of the neck, arms, and legs, with sudden onset in 2014. Tr. 360. Plaintiff reported progressive symptoms, described as aching pain, cramping, numb, and tiring; she rated her pain as 7/10 in severity and 10/10 at its worst. *Id*. She reported she had been seen by infectious disease specialists and completed two rounds of antibiotics and later saw another specialist and was treated with antibiotics for one year. *Id*. She reported she then saw two other specialists and would be seeing a third the following week. *Id*. On physical examination, Ms. Dzielski noted blood pressure of 142/80; neck tenderness of trapezius region; mild tenderness at lumbar paraspinal area bilaterally; and 18/18 tender points of fibromyalgia. Tr. 362. The remainder of Ms. Dzielski's physical examination was essentially normal, and no diagnostic testing was conducted. Tr. 361-62. Ms. Dzielski assessed Lyme disease, chronic pain syndrome, and polycystic ovarian syndrome and indicated that Plaintiff met "the criteria for medical cannabis based on indication of chronic pain." Tr. 362.

On January 26, 2018, Plaintiff presented to Lixin Zhang, M.D. ("Dr. Zhang"), at DENT Neurologic Institute ("DENT"), for a consultation regarding dizziness and weakness. Tr. 388-91.

Plaintiff reported episodes of dizzy spells starting in 2015 that had worsened since 2017, as well as "anxiety issues" and stress. Tr. 388. Dr. Zhang assessed (1) recurrent vertigo; (2) migraine; and (3) anxiety.  Tr. 390. Dr. Zhang opined that "migraine-associated vertigo [was] very likely," but due to Plaintiff's history of Lyme disease, he ordered an MRI of the brain and a VNG[2] and prescribed Lorazepam. *Id*.

Plaintiff returned to DENT for follow-up on March 28, 2018, and was seen by Alanna Castaldo, RPA-C ("Ms. Castaldo"). Tr. 385-87. Ms. Castaldo noted that Plaintiff was stable since her last visit. Tr. 385. She also noted that Plaintiff's recent brain MRI showed "concern for possible pseudotumor cerebri" and recommended an ophthalmology consult. Tr. 387. Plaintiff had declined to undergo vestibular testing (VNG). *Id*. On May 14, 2018, Ms. Castaldo noted that Plaintiff "was essentially stable, if not somewhat worse since her last visit.  Tr. 382-85. Her recent eye examination showed no evidence of papilledema or swelling. Tr. 384. Plaintiff again declined to pursue vestibular testing; she also declined further medications. *Id*.

On August 15, 2018, consultative examiner Stephen Farmer, Psy.D. ("Dr. Farmer"), conducted a psychiatric consultative evaluation. Tr. 556-600. Dr. Farmer found "mild" limitations in interacting and adequately with supervisors and co-workers, and public; sustaining concentration and performing at a consistent pace; sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, and maintaining wellbeing, maintaining personal hygiene and appropriate attire; and "mild to moderate" sustaining concentration and performing a task at consistent pace. Tr. 558-59. He stated that Plaintiff's

---

[2] VNG (videonystagmography) is a test that evaluates eye movements and looks for a specific type of eye movement called nystagmus. Nystagmus happens when the eyes move uncontrollably up and down or side to side. VNG is used to diagnose a disorder of the vestibular system (the balance system in your inner ear). It can also help find problems with the nerves or parts of the brain that are affect the sense of balance. MedLine Plus, available at https://medlineplus.gov/about/using/citation/ (last visited Feb. 8, 2024).

difficulties were caused by adjustment disorder with depressed and anxious mood and other medical problems. Tr. 559.

On August 22, 2018, state agency consultant K. Lieber-Diaz, Psy.D. ("Dr. Lieber-Diaz"), reviewed the medical evidence and completed a Psychiatric Review Technique ("PRT") assessment and found that Plaintiff's mental impairments were non-severe. Tr. 127-29.

On September 1, 2018, Gilbert Jenouri, M.D. ("Dr. Jenouri"), conducted a consultative internal medicine examination. Tr. 561-64. Plaintiff reported that she cooked three times per week, cleaned twice a week, shopped once a week, and performed childcare daily. Tr. 561. Plaintiff was 5 foot nine inches tall and weighed 315 pounds. Tr. 562. Dr. Jenouri noted that Plaintiff was in no acute distress; she had normal gait and stance; and she was able to rise from a chair and get on and off the examination table without difficulty. *Id*. She walked on her heels and toes with difficulty; her stance was normal; she could squat 50%; and she did not use an assistive device. *Id*. Dr. Jenouri noted that Plaintiff had full spinal range of motion and full and/or almost full range of motion throughout; deep tendon reflexes ("DTRs") were physiologic and equal in the bilateral upper and lower extremities; no sensory deficits were noted; and she had 5/5 strength in the bilateral upper and lower extremities. Tr. 563. Hand and grip dexterity was intact and grip strength was 5/5. *Id*. Dr. Jenouri diagnosed history of Lyme disease and joint pain, obstructive sleep apnea ("OSA"), and asthma and assessed a "mild to moderate restriction walking and standing long periods, bending, stairclimbing, lifting, and carrying [, and Plaintiff] should avoid smoke, dust, and other known respiratory irritants." Tr. 563-64.

On September 12, 2018, state agency consultant Gary Ehlert, M.D. ("Dr. Ehlert"), completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff was capable of performing work at the medium exertional level with additional restrictions. Tr. 130-32. Dr. Ehlert found that Plaintiff was capable of lifting and carrying 50 pounds occasionally, and

25 pounds frequently; she could stand and/or walk for about 6 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. Tr. 130-31. She had postural limitations and could occasionally climb ramps/stairs, balance; and never climb ladders/ropes/scaffolds. Tr. 131. She should also avoid climbing and balance due to her history of vertigo but was able to climb stairs with hand railings occasionally. *Id*. Environmental limitations included avoid concentrated exposure to fumes, dusts, gases, poor ventilation; avoid all hazards; and she should avoid all exposure to hazards due to her history of vertigo. Tr. 132.

On September 21, 2018, Plaintiff was seen by infectious disease specialist Michael Hocko, M.D. ("Dr. Hocko"), regarding her history of Lyme disease. Tr. 586-88. She reported she could not walk upstairs at that time. Tr. 586. She also reported cystic acne since 2016 and fibromyalgia, as well as a host of other complaints, including dizziness, forgetfulness, arthritis involving multiple joints, and dermatitis, diarrhea, and ankle swelling. *Id*. Physical evaluation was essentially normal. Dr. Hocko diagnosed eczema, for which he referred Plaintiff to a dermatologist, and ordered testing for Lyme disease.  Tr. 587. Testing was negative for Lyme disease. Tr. 580-85.

On November 23, 2018, Plaintiff returned to Dr. Hocko for follow-up. Tr. 672-73.  Dr. Hocko noted that testing for Lyme disease in April 2014 indicated that she had the disease at that time. Tr. 672. However, he noted that current testing was "not indicative of Lyme disease." Tr. 673. Dr. Hocko stated that he was unsure if Plaintiff's current symptoms related to Lyme disease, but he noted that "there is an entity called post Lyme disease syndrome in which the patient can have residual symptoms of unsuccessfully treated Lyme disease." *Id*. He offered to treat Plaintiff for this, but she declined. *Id*.

Plaintiff returned to Ms. Dzielski on February 5, 2019, for follow-up of diffuse pain secondary to Lyme disease. Tr. 593-94. Plaintiff reported aching pain and cramping. Tr, 593. Her pain was aggravated by weather changes, climbing stairs, driving, lifting objects, looking

downward, looking side to side, rising from seated position, standing, and walking; and mildly alleviated by rest; and she awakened with pain, and she reported decreased quality of life. *Id*. She reported some pain relief with medical cannabis, but her card had expired in November 2018, and she wanted to restart it. Tr. 593. Her physical examination was unremarkable except for tenderness in the trapezius regions; mild tenderness in lumbar paraspinal region bilaterally; and 18/18 fibromyalgia tender points. Tr. 595. Ms. Dzielski noted that Plaintiff was "able to maintain her ADLs, [and] able to have functional gains, improvements, and performance in regard to the treatment plan." *Id*. Ms. Dzielski completed Plaintiff's registration for the New York State medical cannabis program, and Plaintiff was to return in six months.

Plaintiff returned to Ms. Dzielski on August 5, 2019, with similar complaints and examination findings. Tr. 597-600. Plaintiff was to continue using medical cannabis for her chronic pain and return in six months, unless her symptoms worsened. Tr. 599.

On February 3, 2020, Ms. Dzielski completed a Physical Medical Source Statement. Tr. 674-78. Ms. Dzielski diagnosed Lyme disease and chronic pain syndrome. Tr. 674. Ms. Dzielski reported that Plaintiff had a poor prognosis due to "all over body pain" that was uncontrolled. *Id*. Ms. Dzielski also noted that Plaintiff reported "poor sleep" and dizziness, as well as joint swelling and tenderness. Tr. 674-75. She also stated that Plaintiff's impairments lasted or could be expected to last at least twelve months; and emotional factors contributed to symptoms of anxiety. Tr. 675. Ms. Dzielski opined that Plaintiff was limited to sitting for just 20 minutes, walking 20 minutes and standing to just 10 minutes and was unable to sit, stand, or walk for more than two hours out of an 8-hour workday due to muscle weakness, chronic fatigue, and pain. Tr. 676. Ms. Dzielski opined that Plaintiff would be "rarely" capable of lifting any amount of weight. *Id*. Ms. Dzielski further opined that Plaintiff would be off task more than 25 percent of a workday and/or be absent more than four days per month due to physical symptoms if she did work. Tr. 677.

On February 21, 2020, Plaintiff was seen again by Dr. Hocko. Tr. 679-80. Plaintiff reported she was "attempting to apply for social security disability" because "she has really not been able to work." Tr. 679. Plaintiff's physical examination was essentially normal. *Id*. Dr. Hocko stated he "was convinced that [Plaintiff has] a post Lyme disease syndrome." Tr. 680. However, he stated that he was uncomfortable filling out disability paperwork because he had not seen Plaintiff since 2018, and he felt "this paperwork would be better suited by PCP, rheumatologist, or outside practitioner hired to evaluate her for degree of disability." *Id*.

As noted above, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective

evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new

regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her application on June 28, 2018, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes: (i) Length of the treatment relationship; (ii) Frequency of examinations; (iii) Purpose of the treatment relationship; (iv) Extent of the treatment relationship; and (v) Examining relationship); (4) Specialization; and (5) Other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not

required to explain how he or she considered each factor. *Id.* Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id.* Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id.*

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding that Plaintiff could perform medium work with certain limitations. Tr. 87.

In formulating Plaintiff's RFC, the ALJ reasonably considered the opinion evidence and prior administrative findings in accordance with the regulations. First, the ALJ considered the findings of state agency examiner Dr. Ehlert. Tr. 90, 130-31. Dr. Ehlert assessed that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, climb stairs occasionally but never climb ladders, occasionally balance, and frequently stoop, kneel, crouch, and crawl. Tr. 130-31. The ALJ found Dr. Elhert's opinion persuasive, as it was consistent with the medical evidence in the record, showing that Plaintiff had normal gait and minimal abnormalities. Tr. 90, 362, 379, 383, 386, 390, 403, 405, 407, 409, 411, 414, 431, 499, 525, 539, 552, 591, 595, 599, 610, 620, 633, 641, 648, 657, 664, 679.

Plaintiff takes issue with the fact that the ALJ found Dr. Elhert's opinion more persuasive that the opinions of other sources. *See* ECF No. 5-1 at 21. However, Dr. Elhert had the benefit of reviewing the record, and as a state agency medical consultant was an expert in the Social Security disability evaluation. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing *Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993)); 20 C.F.R. § 404.1513a(b)(1) (State agency medical consultants are highly qualified and experts in Social Security disability evaluation). Additionally, it is the role of the ALJ, and not Plaintiff, to reconcile the evidence. *See Veino*, 312 F.3d at 588 ("conflicts in the medical evidence are for the Commissioner to resolve").

Plaintiff also asserts that the Dr. Elhert's assessment was faulty because he was not aware of Plaintiff's Lyme disease or fibromyalgia. *See* ECF No. 5-1 at 21. Plaintiff is incorrect. First, as the ALJ noted, Plaintiff tested negative for Lyme disease during the relevant period and declined to pursue treatment for post-Lyme disease syndrome. Tr. 84, 90, 580, 673. Furthermore, Dr. Elhert specifically noted that Plaintiff "alleg[ed] disability due to Lyme disease" (Tr. 132), and Lyme disease was also mentioned in the examination report from Dr. Jenouri (Tr. 561), which Dr. Elhert reviewed (*see* Tr. 129-30).

Regarding Plaintiff's fibromyalgia, Plaintiff argues that not only did Dr. Elhert not consider it, but the ALJ also failed to properly analyze it. *See* ECF No. 5-1 at 26. However, Plaintiff does not identify any evidence to suggest greater functional limitations from fibromyalgia than the ALJ already accounted for in her RFC finding. *See Valentin v. Comm'r of Soc. Sec.*, 820 F. App'x 71, 713 (2d Cir. 2020) ("Valentin does not identify any evidence supporting a more limited RFC."); *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."). Additionally, despite finding tender points, the record does not indicate a diagnosis of fibromyalgia. As SSR 12-2p makes clear, fibromyalgia is a diagnosis of exclusion, such that one of the explicit criteria is that "[e]vidence that other disorders could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." SSR 12-2p; *see also Kevin A. R. v. Kijakazi*, No. 621CV0881DNHDEP, 2022 WL 18587763, at *7 (N.D.N.Y. Nov. 9, 2022), *report and recommendation adopted sub nom. Kevin R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-881, 2023 WL 196049 (N.D.N.Y. Jan. 17, 2023)

Furthermore, even if the record had established a diagnosis of fibromyalgia, not every person with a fibromyalgia diagnosis is totally disabled: "Mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013) (brackets and citations omitted). Thus, even

if a claimant had a diagnosis of fibromyalgia, objective findings such as normal strength, sensation, and range of motion could still indicate that the condition was not totally disabling. *Id.*

The ALJ also considered the opinion of consultative examiner Dr. Jenouri. Tr. 90, 561-64. Dr. Jenouri opined that Plaintiff had "mild to moderate" restrictions walking and standing for long periods, bending, climbing stairs, lifting, and carrying, and she should avoid smoke, dust, and other known respiratory irritants. Tr. 563-64. The ALJ explained that she found Dr. Jenouri's opinion "not persuasive" because the opinion was nonspecific as to the lifting and/or walking restrictions, and it was not supported by the examination notes. Tr. 90.  For example, the ALJ noted that Dr. Jenouri only documented mild abnormalities, and on examination, Plaintiff had normal stance and full range of motion; she could rise from a chair and get on and off the examination table without difficulty; and she did not use an assistive device. Tr. 88, 562. Dr. Jenouri also noted that Plaintiff showed no abnormality in the thoracic spine and had full range of spinal motion. Tr. 88, 563. Deep tendon reflexes were physiologic and equal in the bilateral upper and lower extremities; no sensory deficits were noted; Plaintiff had full strength in the bilateral upper and lower extremities; and no physical abnormalities were noted. Tr. 88, 90, 562-63. As the ALJ reasonably explained, "if [Plaintiff] had limitations considered "moderate[,]" she would have expected Dr. Jenouri to document more than minimal abnormalities during testing." Tr. 90.

The ALJ also considered the opinion of Ms. Dzielski, who treated Plaintiff on November 17, 2017 (Tr. 360), then again in February 2019 (Tr. 593-94) and August 2019 (Tr. 597-600), and provided a medical source statement in February 2020 (Tr. 674-78). Tr. 90-91. In her February 2020 statement, Ms. Dzielski indicated that Plaintiff had a diagnosis of Lyme disease and chronic pain syndrome and opined that she could sit for 20 minutes at one time, stand for 10 minutes at one time, sit/stand/walk less than two hours in an 8-hour workday, and would need 5-minute unscheduled breaks every 20 minutes. Tr. 676. Plaintiff could rarely lift less than 10 pounds and

never more than that, and could never twist, stoop, crouch, or climb stairs or ladders. Tr. 676-77. Ms. Dzielski also opined Plaintiff would be off task 25 percent or more of the workday. Tr. 677.

The ALJ explained why she was not persuaded by this opinion. Tr. 90. As the ALJ noted, Ms. Dzielski made a diagnosis of Lyme disease without conducting any testing, and Plaintiff's physical examinations with Ms. Dzielski were essentially normal showing full strength in the upper and lower extremities, normal gait, and normal range of motion. Tr. 84, 595, 599, 361-62. The ALJ also noted that Plaintiff tested negative for Lyme Disease on November 9, 2018 (Tr. 580), and although Dr. Hocko opined that Plaintiff likely had post Lyme disease syndrome, Plaintiff declined to receive treatment (Tr. 673, 680). Tr. 84. Additionally, examination findings throughout the record showed normal gait, full strength throughout, near full range of motion throughout, intact reflexes, intact sensation and she was described as not distressed, comfortable, alert, and oriented. Tr. 91, 362, 383, 386, 390, 397, 405, 407, 409, 411, 503, 561-64, 591, 595, 599, 610, 620, 641, 648, 657, 664. As the ALJ aptly noted, if Plaintiff was as limited as Ms. Dzielski opined, she "would expect treatment records to document significant abnormalities on a consistent basis, as well as more intensive treatment modalities." Tr. 91. Such was not the case here.

In addition to relying on the longitudinal treatment record and the opinion evidence discussed above in support of her physical RFC finding, the ALJ also properly relied on Plaintiff's conservative treatment history and her activities of daily living. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Contrary to Plaintiff's assertion (*see* ECF No. 5-1 at 25), the ALJ appropriately considered Plaintiff's history of conservative treatment, which consisted of home exercise, a short period of physical therapy, and medical marijuana. Tr. 89, 382, 542-45, 575, 589, 593, 597, 607, 618, 654. it was indeed for the ALJ to Plaintiff's conservative treatment. Pl. Mem. 25. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (finding that conservative treatment weighed against a finding of disability).

The ALJ also properly considered Plaintiff's activities of daily living. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)). Here, the ALJ noted that Plaintiff's activities included cooking three times a week, cleaning twice a week, shopping once a week, and performing daily childcare. Tr. 88, 247, 558, 561. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (ALJ's RFC finding supported by substantial evidence including activities of daily living); *see also Poupore*, 556 F.3d at 306 (ALJ may reject Plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability, which in Poupore's case, included childcare). The ALJ reasonably found that these activities, as well as the rest of the foregoing evidence, indicated that Plaintiff's impairments were less limited than she had alleged. *See* Tr. 87-91.

Furthermore, even a more restrictive RFC finding would not change the outcome of the ALJ's decision. While the RFC is for medium work, the ALJ also found that Plaintiff could perform numerous jobs at the light and sedentary exertional levels, including her past relevant

work of quality assurance work (DOT No. 806.367-018, light work) and as a program coordinator (DOT 189.167-030, sedentary work). Tr. 91. The ALJ found that Plaintiff could also perform numerous other jobs in the national economy. Tr. 92-93. "The Commissioner need show only one job existing in the national economy that [claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). Thus, even if the Court were to find that the ALJ erred in not formulating a more restrictive RFC, such further limitations would still be consistent with light and/or sedentary work and would still lend themselves to a finding of not disabled.

With respect to Plaintiff's alleged mental limitations, the ALJ considered the opinion of consultative examiner Dr. Farmer and found it "partially persuasive." Tr. 86. Dr. Farmer opined that there was no evidence of limitation in understanding, remembering, and applying information and only mild limitations with all other aspects of mental functioning, which is generally consistent with a nonsevere impairment. Tr. 86, Tr. 558-59. However, Dr. Farmer also opined that Plaintiff had "mild to moderate" limitations with sustaining concentration and performing tasks at a consistent pace. Tr. 86, 558. As the ALJ explained, this portion of Dr. Farmer's opinion was more restrictive than supported by the longitudinal record and more restrictive than the opinion of state agency consultant Dr. Lieber-Diaz, who opined that Plaintiff's mental impairments were non-severe. Tr. 86, 128. As the ALJ explained, she found Dr. Lieber-Diaz's opinion persuasive because it was supported by the medical evidence showing that Plaintiff consistently presented to medical appointments and was described as in no apparent distress, healthy appearing, alert and oriented, cooperative, and with normal mood and affect and no limitations in memory, concentration, or her ability to communicate. Tr. 86, 307, 311, 323, 361-62, 369, 374, 383, 386, 390, 394, 396, 400, 403, 414, 417, 419, 414, 434, 437, 505, 508, 511, 518, 525, 527, 557, 567, 570, 575, 605, 610, 614, 620, 626, 641, 651, 657, 659, 664, 668.

Plaintiff does not point to any evidence suggesting greater limitations but inaccurately argues that Dr. Farmer's opinion of "mild to moderate limitation sustaining concentration performing a task at a consistent pace" required the addition of mental limitations in the RFC. *See* ECF No. 5-1 at 20. Even if the ALJ had been persuaded by Dr. Farmer's opinion, the ability to perform unskilled work such as the ALJ found here, is consistent with even moderate limitations. *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014), 758 F.3d (finding that moderate limitation in maintaining concentration, persistence, or pace or in relating with others did not preclude unskilled work); *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (finding ALJ's RFC corresponded with opinions suggesting Snyder suffered, at most, moderate limitations in mental work-related functioning); *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in plaintiff's work-related functioning); *Calabrese v. Astrue*, 358 F. App'x 274, 277 (2d Cir. 2009) (moderate limitations in different work-related areas were reasonably found to not preclude unskilled work); *Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases). Accordingly, the Court finds no error in the ALJ's mental RFC finding.

Plaintiff's second point of error contends that the ALJ improperly evaluated the credibility of Plaintiff's subjective complaints, as required by SSR 16-3p. *See* ECF No. 5-1 at 27-30. Plaintiff's argument is unpersuasive. As SSR 16-3p explains, "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." SSR 16-3p, 2016 WL

1119029, at *10. Thus, the analysis is not a "credibility" determination, but rather an independent finding based on the record at large. *Id.* at *1-2.

"It is the function of the [ALJ], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant." *Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citations and brackets omitted). When subjective allegations are at issue (as opposed to objective evidence), the discretion and role of the adjudicator as the factfinder becomes even more important to resolve the conflict. *See Richardson*, 402 U.S. at 399 ("We have on the one hand, an absence of objective findings, an expressed suspicion of only functional complaints, of malingering, and of the patient's unwillingness to do anything about remedying an unprovable situation. We have, on the other hand, the claimant's and his personal physician's earnest pleas that significant and disabling residuals from the mishap of September 1965 are indeed present . . . . The trier of fact has the duty to resolve that conflict.").

The ALJ in this case provided an extensive analysis of Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms, and concluded that they were inconsistent with the evidence in the record. Tr. 88. The ALJ considered that while Plaintiff alleged that her physical symptoms prevented her from working, and she was extremely limited in her ability to lift, stand, carry, and walk, or drive, this was not consistent with the evidence in the record, as discussed above. Tr. 88, 103, 253-54. The ALJ considered Plaintiff's mostly normal physical examination findings, lack of mental health treatment, normal mental status examinations, and activities of daily living. Tr. 86, 88. *See Poupore*, 566 F.3d at 307 (ALJ properly considered the claimant's activities in finding that his subjective complaints were insufficient to establish disability). Considering all the evidence detailed above, the ALJ reasonably determined that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms

were not entirely consistent with the evidence in the record. Tr. 90-91. *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

Moreover. as previously noted, Plaintiff bears the ultimate burden of proving that she was more limited than the ALJ found. *See Smith*, 740 F. App'x at 726; *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the entire record, including physical examination and other objective findings, Plaintiff's testimony about her symptoms, her reported daily activities, and the opinions of consultative and treating medical sources, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 5) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 6) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE